UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL J. COLE, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil No. 07-82-B-W |
| ) | |
| MAINE DEPARTMENT OF ) | |
| CORRECTIONS, et al., ) | |
| ) | |
| Defendants ) | |

**RECOMMENDED DECISION ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

In his third amended complaint Michael Cole sues the Maine Department of Corrections and several of its employees pursuant to 42 U.S.C. § 1983. Cole claims that the Department's Policy 21.2, entitled "Prisoner Mail," "is ambiguous, irrational, confiscatory, excessively and needlessly restrictive and at the same time facially overbroad, and is arbitrary and discriminatory in granting unfettered administrative discretion, all in violation of the First and Fourteenth Amendment rights of the plaintiff[.]" Cole has filed a motion seeking a temporary restraining order (Docket No. 34) which is actually a request for preliminary injunctive relief. The defendants have filed an objection. I acceded to Cole's request for an extension of time to file his reply but he has not filed anything further in the time granted.[1]

---

[1] I decided to go ahead and issue the recommended decision after Cole's extended time for filing his reply lapsed because this is a motion for preliminary injunctive relief which should be addressed as promptly as possible. Also a factor in moving forward now is the recognition that Cole could not add new substantive issues in a reply because the defendants only had an opportunity to respond to his initial injunctive pleading.

**Discussion**

Four elements govern the Court's determination of the pending motion for preliminary injunctive relief:

(1) the probability of the movant's success on the merits;
(2) the prospect of irreparable harm absent the injunction;
(3) the balance of the relevant equities (focusing upon the hardship to the movant if an injunction does not issue as contrasted with the hardship to the nonmovant if it does); and
(4) the effect of the court's action on the public interest.

Matos v. Clinton Sch. Dist., 367 F.3d 68, 73 (1st Cir. 2004).  I am also mindful of the 18 U.S.C. § 3626(2) limitation on injunctive relief vis-à-vis prison conditions.

*Challenges to the Corrections Policy in Cole's Motion*

In his motion for injunctive relief, Cole makes it clear that he wants the court to "enjoin[] the Defendants from enforcing several portions of the Maine Department of Corrections Mail Policy 21.2 that are causing continued irreparable injury to the Plaintiff."  (Mot. Inj. Relief at 1) (emphasis added).

But Cole does not adequately address "several" portions of the policy in terms of making his case for injunctive relief.  Cole complains that Sections A-17 and A-18 of the policy ban receipt of any original, photocopied or downloaded materials that are not primarily legal, religious, or political (election or referendum related) in content and maintains that anything that falls outside these parameters is destroyed "even if their content is harmless."   (Inj. Mot. at 1-2.)

Section A-17 reads: "[A] prisoner may receive material downloaded from the internet or from computer software that primarily discusses religious, legal (e.g., court cases, statutes, constitutional provisions, etc.), or political (referendum or election related) subject matter."  Section A-18 of the policy provides:  "Prisoners may not receive

any other original, photocopied or downloaded materials.  Mail or other designated staff shall immediately dispose of any of the prohibited items."  Cole asserts as examples of materials that have been sent to him and destroyed: articles from Newsweek.com, writers guidelines from Chippewapublishing.com, and cartoon clipart from a computer.  (Id. at 2.)[2]

Cole cites to United States Supreme Court precedents  -- Thornburgh v. Abbott, 490 U.S. 401 (1989), Turner v. Safley, 482 U.S. 78 (1987), and Pell v. Procunier, 417 U.S. 817 (1979) – and opines:  "Granted, those cases deal with publications as opposed to internet materials, but a distinction between information published on the internet rather than in hard copy is a hard one to support."  (Id. at 2-3.)  He hypothesizes that if the penological interest served by this policy is volume control, then there are alternatives that have a lesser impact on inmate rights, for example they could limit the amount of material allowed to be received.  (Id. at 3.)  "Whatever the prison's interests are in the complete ban of non-legal, non-religious, non-election or [non]-referendum related matter, it is sure that those interests can be met by something much more reasonable than a blanket ban."  (Id. at 4.)

While this motion seems to focus on the internet materials that are destroyed that were sent to Cole, Cole's Third Amended Complaint cites to many other aspects of the overall Prisoner Communication Policy.  For example, Cole faults the policy and the defendants:

- for not providing a designee for the Chief Administrative Officer who prisoners can contact in the context of the regulation restricting the sending and receiving of

---

[2]     The policy has not actually been provided by either side to this dispute, at least it has not found its way to the electronic docket.  I located it on the Department of Corrections' web cite: http://www.maine.gov/corrections/Policies/PrisonerMail.doc.

3

general mail when there is a "reasonable suspicion" that the prisoner has or will violate mail procedures (3d Am. Compl. at 3-4);
- for not indicating or providing any guidelines as to what constitutes reasonable suspicion entitling the Chief Administrative Officer/designee to read in and out going mail (id. at 4);
- for denying "communicative property and means of communication" without guidelines, leading to an arbitrary enforcement of the policy (id. at 4);
- for not having an adequate mail log for all mail and publications disposed of as contraband that is deemed by staff to have no monetary value (id. at 4-5);
- for tolerating the needless and arbitrary disposal or destruction of inmate money and property sent by family, friends, and acquaintances, noting that the policy allows mail to be disposed of without actually being opened, based on the sender rather than the content of the mail (id. at 5-6);
- for allowing theft of inmate checks or cash when staff desire, by allowing the staff to put the checks or cash in the facility's prisoner benefit account (id. at 6);
- for arbitrarily delaying outgoing correspondence for up to twenty-four hours, a delay that can impact an inmate's ability to meet rigorous court timelines (id. at 6);
- for not having a provision that requires notification of an inmate whose correspondence is being scrutinized by prison officials or notification of an inmate that publications are being destroyed before the inmate can properly exhaust administrative remedies (id. at 7);
- for not allowing clippings, photocopies, internet materials, etcetera, unless they primarily discuss legal, religious, or political issue, thereby barring material based on source rather than content (id. at 7)(emphasis added);
- for not allowing catalogs, pen-pal solicitations, and information brochures unless they are primarily legal, religious, or political (id. at 7-9);
- for allowing censorship of prison mail in that the policy permits the Commissioner or a designee to suspend a prisoner's access to free postage for privileged mail for up to 90 days on the grounds that an inmate is sending "excessive amounts" of mail, a term that is arbitrary, (id. at 9);
- for suppressing the right to grieve the 90-day suspension on free postage, while in the meantime cutting off the inmates ability to communicate with counsel or state or federal legislatures (id.);
- for allowing Corrections employees to open, inspect, and review an inmate's (incoming) privileged mail outside the inmate's presence on the theory that the mail is from a Correction's official (id. at 10);
- for sanctioning the immediate destruction or censoring of inmate mail if the magazine, newspaper, or book is not sent directly from a publisher or commercial distributor (id. 10);
- and for prohibiting, based on personal taste, any material that depicts sexual acts between men and women and women and women in a unlimited manner, reaching material that is not dangerous, lewd, or obscene (id. at 10-11);

*The Defendants' Response*

In responding to the motion for injunctive relief, the defendants interpret the motion as only seeking an injunction of the part of the policy that "prohibits the receipt by prisoners of materials <u>from the internet</u> that are not primarily religious, legal, or political (election or referendum related). (Opp'n Mot. Inj. at 1)(emphasis added).

The defendants argue:

> The plaintiff has not shown that he will suffer irreparable injury if the injunction is not granted. At the most basic level, while the plaintiff alleges that "harmless" materials downloaded from the internet have been sent to him and destroyed, he has provided no proof of such. Moreover, there is not even so much as an allegation that these, or at least similar, materials could not have been sent to him within the parameters of the mail policy (for example, by way of a conventional publication). Finally, the plaintiff's assertion that the restriction of First Amendment rights always constitutes irreparable harm is flawed. As he himself recognizes, the First Amendment rights to which prisoners are entitled are already limited compared to those to which persons living in free society are entitled. To contend that any restriction on the former gives rise to grounds for injunctive relief would wreak havoc on the ability of prison officials to protect security, safety, and good order. Notably, the cases cited by the plaintiff in support of his assertion are not prisoner cases. Thus, the plaintiff has failed to make the required showing of "irreparable harm."
> ….The plaintiff then sets up the "straw man" of volume control as the objective being served and proceeds to offer what he says is an easy alternative that would meet that objective. However, the objective actually being served is to keep away from prisoners harmful materials, such as those describing how to circumvent security devices, describing how to make weapons, bombs, alcohol, and drugs, and constituting child pornography. This is the sort of material that is rarely found in conventional publications and, when it is, is easily spotted. On the other hand, this type of material abounds on the internet, and the ability to use technology to imbed it in the midst of other, harmless material makes it difficult to detect. As well, a prisoner's correspondent is far less likely to try to imbed harmful material in a letter, as doing so would eliminate any excuse that it was sent to the prisoner "by mistake."
> …. [L]ike inmate correspondence, internet materials might contain much that is harmful to prison security, safety of guards and others, and

> orderly management of a correctional facility. Using the alternative of reading every item from the internet is even less practical than would be reading every piece of inmate correspondence, given the much less effort involved in downloading materials from the internet versus writing a letter. Limiting the amount of material that a prisoner may receive from the internet would not obviate the need to read what is sent in and would add the burden of somehow tracking, on an individual basis, the amount of material sent in or attempted to be sent in to each of the nearly two thousand prisoners of the Department of Corrections.
> …
> … Then there are the two factors the plaintiff does not even mention, the harm which would be inflicted on the defendants and on the public interest by the granting of injunctive relief. The only alternative to the ban would inflict harm on the defendants by imposing undue burdens as well as by increasing the danger of harmful materials slipping through, something which would also adversely affect the public's interest in having secure, safe, and well-managed correctional facilities.

(Opp'n Mot. Inj. at 2-4.)

*Recommended Disposition*

It is clear to me that the only possible claim that can be analyzed in terms of Cole's motion for injunctive relief is the one identified by the defendants pertaining to internet content that is not primarily religious, legal, or political; this is the only claim on which Cole has provided any non-conclusory argument.   It is equally clear to me, under the four elements of the preliminary injunction analysis that Cole has failed to meet his burden as the party moving for injunctive relief.[3]   In particular, Cole has failed to demonstrate that he will be irreparably harmed if the policy is not enjoined during the pendency of his lawsuit.  The Newsweek article and the publisher information that were allegedly destroyed could presumably be obtained in a different format that complied with the overall policy. Assuming that the cartoon is only available on the internet, denial

---

[3] I recognize that ultimately it will be the defendants who will have their own burden apropos the ultimate merits of Cole's claim to demonstrate the penological need for this and the other challenged policies.

of access to a single cartoon would not alone represent irreparable harm sufficient to warrant preliminary injunctive relief in a prison conditions suit.  See 18 U.S.C. § 3626(2); Dupont v. Saunders, 800 F.2d 8, 10 (1st Cir. 1986); see cf. Lambert v. Buss, 498 F.3d 446, 452 (7th Cir. 2007) ("Lambert has not shown the existence of irreparable harm through the mere possibility that some unforeseen complication will result in a lingering death causing Lambert to suffer unnecessary pain. He cannot rely on this possibility as the grounds for substantial risk of harm.").[4]

## Conclusion

For the reasons stated above I recommend that the Court deny Cole's motion for preliminary, injunctive relief (Docket No. 34).

---

[4]     This conclusion is sufficient to deny injunctive relief.  I have considered the question of a likelihood of success on the merits but the limited precedents I could identify on this type of policy in no way assure the defendants of clear sailing on this part of Cole's complaint, see Canadian Coalition Against Death Penalty v. Ryan, 269 F.Supp.2d 1199, 1202-03 (D.Ariz. 2003) ("Defendant asserts the blanket restriction on communications between inmates and Providers is necessary to prevent attempts to defraud the public and to preclude inappropriate contact with minors, victims, or other inmates.  However, existing regulations and statutes already preclude such conduct.")(docket citation omitted); Clement v. California Dept. of Corr., 220 F.Supp.2d 1098, 1108-14 (N.D. Cal.2002) ("California prisoners do not have access to the Internet. The regulation at issue in this motion prohibits people outside the prison from sending to the prison information published on the Internet. Because neither the Minnesota nor the Arizona statute purports to address prisoners' access to information published on the Internet, these statutes offer no support for Defendants' position that the disputed regulation is reasonable."); Whitmore v. Pierce County Dept. of Cmty. Corr., No. CO5-5265RBL, 2007 WL 2409848, *4 (W.D.Wash. Aug 20, 2007) ("The cases cited by plaintiff do hold that information generated from the internet may be mailed to an inmate and should not be rejected just because it came from the internet."); see also West v. Frank, No.04-C-173-C, 2005 WL 701703, *6 -7  (W.D.Wis. Mar. 25, 2005) ("In sum, plaintiff has not met his burden of showing that his right to receive mail containing materials downloaded off the internet was clearly established at the time defendants refused to deliver his mail. Accordingly, defendants are entitled to qualified immunity regarding his request for money damages."); see cf. Lindell v. Frank, No. 02-C-21-C, 2003 WL 23198509, *14 -17 (W.D. Wis. May, 5, 2003) ("I conclude that plaintiff is entitled to summary judgment on this claim. Prison officials undoubtedly have a legitimate interest in limiting the ability of inmates to receive hidden messages that might relate to escape attempts or other criminal activities. And like the court in Clement, I assume 'that controlling mail quantity serves a valid penological purpose.' Id. at 1113. Nevertheless, defendants have not conclusively demonstrated a reasonable relationship between these objectives and their policy prohibiting prisoners from receiving all clippings and photocopies. Like the defendants in Clement, defendants have not explained why newspaper clippings are any more likely to contain hidden messages than the handwritten, typed or word processed correspondence routinely sent to inmates. Therefore, the policy regarding clippings and photocopies appears to be an arbitrary and irrational method for screening out hidden messages."), although I could not find precedent examining a policy that had this type of exception for "religious, legal (e.g., court cases, statutes, constitutional provisions, etc.), or political (referendum or election related) subject matter."

NOTICE

       A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

       Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

                              /s/ Margaret J. Kravchuk
                              U.S. Magistrate Judge

January 23, 2008.